IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SILVIA GARCIA RODRIGUEZ, as administrator of the Estate of Marco Antonio Galvan and individually on behalf of all statutory death beneficiaries of MARCO ANTONI GALVAN, and as next of friend to M.M.G.G., <br><br> Plaintiffs, <br><br> v. <br><br> BLAINE LARSEN FARMS, INC., <br><br> Defendant. | § § § § § § § § § § § § § § § § | 2:21-CV-52-Z |



## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Blaine Larsen Farm, Inc.'s ("Defendant") Motion for Summary Judgment (ECF Nos. 29, 30) ("Motion"), filed on November 1, 2021. Defendant asserts the Texas Workers' Compensation Act ("TWCA"), TEX. CIV. PRAC. & REM. CODE § 148.003, and the Texas Pandemic Liability Protection Act ("PLPA"), TEX. LAB. CODE § 406.031, prohibit Plaintiffs Silvia Rodriguez's and M.M.G.G.'s ("Plaintiffs") claims. The Court agrees. Having considered the pleadings, evidence, and relevant law, the Court **GRANTS** the entire Motion.

### BACKGROUND

On July 2, 2020, Marco Galvan — a temporary H-2A employee[1] — began to work for Defendant in Dalhart, Texas. ECF No. 1-1 at 4. Under Galvan's agreement with Defendant, Defendant was to provide Galvan with free housing, food, transportation, and other necessities, including medical care. *Id.*

---

[1] *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

Plaintiffs allege Defendant had experienced rolling outbreaks of COVID-19 in its workforce since as early as March or April 2020. *Id.* at 4. Defendant failed to inform Galvan of the COVID-19 outbreaks and the risk of COVID-19 at Defendant's facilities. *Id.* at 5. On July 10, Galvan began to exhibit severe COVID-19 symptoms. *Id.* at 5. Defendant failed to provide Galvan with access to transportation or inform him of his right to seek medical care. *Id.*

Plaintiffs allege, by July 10, Defendant already housed dozens of employees in designated "quarantine housing" throughout its property. *Id.* On July 14, Galvan told his supervisor he felt ill and asked a human-resources employee if he could go home to Mexico to recover. *Id.* Although the human-resources employee told Galvan he could not leave the country, she told him he could visit a local clinic. *Id.* On July 15, Defendant provided Galvan and other employees who exhibited COVID-19 symptoms transportation to a local clinic. *Id.* Galvan tested positive for COVID-19 at the clinic. *Id.* Defendant quarantined Galvan in a home-trailer unit at the recommendation of Galvan's healthcare provider, various public-health guidelines, and Galvan's H-2A contract with Defendant. *Id.* at 6. Plaintiffs allege Defendant did not provide its quarantined workers with adequate food, supplies, or medical care. *Id.*

Plaintiffs allege Galvan's conditions deteriorated in quarantine. *Id.* On July 20, Galvan's roommates informed Defendant that Galvan was seriously ill. *Id.* Defendant called emergency medical services to treat Galvan. *Id.* By the time first responders arrived, however, Galvan had died. *Id.*

Plaintiffs sued Defendant in state court for negligence, negligent entrustment, gross negligence, loss of consortium, and breach of contract. ECF No. 1-1 at 9–10. Plaintiffs also bring wrongful-death and survival claims. *Id.* at 9. Defendant removed this case to federal court on diversity grounds. *See* ECF No. 1.

**LEGAL STANDARD**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if its existence or non-existence "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he substantive law will identify which facts are material." *Id.* at 248. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of the motion and demonstrate from the record that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas. Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing summary judgment evidence, the court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). A court cannot make a credibility determination when considering conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If some evidence supports a disputed allegation, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250. When a party seeks summary judgment on an affirmative defense — as Defendant does here — the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017).

ANALYSIS

Plaintiffs sued Defendant in state court for negligence, negligent entrustment, gross negligence, loss of consortium, and breach of contract. ECF No. 1-1 at 9–10. Plaintiffs also bring wrongful-death and survival claims. *Id.* at 9. Defendant asserts Plaintiffs' claims are barred under the TWCA's exclusive-remedy provision and the PLPA. ECF No. 30 at 1. Because the TWCA and PLPA are Texas statutes, Texas substantive law governs. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Plaintiffs' Negligence-Based Claims Are Barred

Plaintiffs allege "the actions of Defendant, as set forth above, constituted negligence" and "negligent entrustment." ECF No. 1-1 at 9. Plaintiffs also allege "[t]he actions of Defendant, as set forth above, constituted gross negligence" and specify the gross-negligence claim "is brought under common law." *Id.* at 10. Plaintiffs' claims are no more specific than these naked, bare-boned allegations. *See generally id.*

Negligence is a common-law doctrine under which a defendant may be liable for damages proximately caused by a breach of duty owed by the defendant. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). "The elements of actionable negligence are: the existence of a duty on the part of one party to another; a breach of that duty' and damages to the party to whom the duty was owed proximately caused by the breach of that duty." *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 376 (Tex. 1984). Gross negligence adds two more elements: viewed objectively from the actor's standpoint, the negligent act or omission involved an extreme risk considering the probability and magnitude of potential harm to others and the actor was actually and subjectively aware of the risk but proceeded without a conscious regard for the safety of others. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994). Negligent entrustment also "requires a showing of

more than just general negligence." *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 910 (Tex. 2016). Negligent entrustment "requires separate negligent acts by two parties: the owner's negligence in entrusting property to another, and the entrustee's negligence in using that property." *Endeavor v. Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019).

If any element of a negligence-based claim fails, the entire claim fails. Moreover, if an element of Plaintiffs' negligence claim fails, so too must their gross-negligence and negligent-entrustment claims. Before the Court analyzes the substance of Plaintiffs' negligence-based claims, however, the Court must analyze whether Plaintiffs can pursue those claims considering the TWCA's and PLPA's statutory prohibitions.

1. <u>The TWCA bars Plaintiffs' negligence and negligent-entrustment claims.</u>

The Texas Legislature enacted the TWCA to provide prompt remuneration to employees who sustained injuries or death in the course and scope of their employment. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex. 1980). The TWCA relieves employees of the burden of proving their employer's negligence and, in exchange, prohibits an employee from seeking common-law remedies sounding in tort or contract from his employer for personal injuries sustained in the course and scope of his employment. *See* TEX. LAB. CODE § 406.031; *Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012).

"Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary . . . for the death of or a work-related injury sustained by the employee." TEX. LAB. CODE § 408.001(a). A participating employer may assert this exclusive-remedy provision as an affirmative defense to a claim when an employee is injured or dies from a work-related injury. *Jefferson County v. Farris*, 569 S.W.31 814, 823 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). The only exception to the exclusive-

remedy provision is when an employee's death "was caused by an intentional act or omission of the employer or by the employer's gross negligence." TEX. LAB. CODE § 408.001(b). Although the TWCA cannot prohibit Plaintiffs' gross-negligence claim, it can prohibit Plaintiffs' negligence and negligent-entrustment causes of action.

When a party moves for summary judgment on an affirmative defense, he must establish each element of the defense as a matter of law. *Dewan*, 858 F.3d at 334. To prevail under the TWCA's exclusive-remedy provision, Defendant must show: (1) Defendant employed Galvan; (2) Galvan was covered by a workers' compensation policy; and (3) Galvan's death was worked related. TEX. LAB. CODE § 408.001(a); *Casados*, 358 S.W.3d at 244.

Both parties agree Defendant employed Galvan. ECF No. 1-1 at 2; ECF No. 9-1 at 3; ECF No. 18 at 2. Because no party disputes Defendant employed Galvan, there is no genuine dispute as to a material fact relevant to the first element of Defendant's exclusive-remedy provision defense. *See* FED. R. CIV. P. 56(c)(1)(B). As for the second element, a court should construe the TWCA liberally in favor of workers' compensation coverage. *Casados*, 358 S.W.3d at 241. Defendant's Brief in Support of Motion for Summary Judgment included an exhibit — a worker's compensation declarations page — that contains insurance policy information. ECF No. 30-2 at 1–2. The declarations page lists the policy period as "07/01/20 to 07/01/2021." *Id.* at 1. Plaintiffs filed a claim for workers' compensation benefits for Galvan's July 20, 2020 death on October 3, 2020. ECF No. 30-2 at 3–6. This evidence supports the material fact that Defendant's workers' compensation policy covered Galvan at the time of his death. No genuine dispute about this fact exists. *See* FED. R. CIV. P. 56(c)(1)(B).

The TWCA's exclusive-remedy provision applies to "the death of a work-related injury sustained by the employee." TEX. LAB. CODE § 408.001(a). Plaintiffs claim an issue of material

fact exists as to whether Galvan's death was work related because Defendant's workers' compensation insurance carrier disputed that Galvan's death occurred in the course and scope of his employment. ECF No. 46 at 10–11. But Plaintiffs have judicially admitted Galvan's death was worked related.

"A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). A judicial admission must be: "(1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Cherry v. Kroger Tex. LP*, No. 4:19-CV-00887-O, 2020 U.S. Dist. LEXIS 173285, at *9 (N.D. Tex. Sept. 22, 2020) (citing *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001)). "Pleadings are for the purpose of accurately stating the pleader's version of the case, and they bind unless withdrawn or altered by amendment." *Sinclair Refin. Co. v. Tompkins*, 117 F.2d 596, 598 (5th Cir. 1941).

"Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez*, 244 F.3d at 476. "Facts that are admitted in the pleadings are no longer at issue." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (internal marks omitted). The bound party cannot present evidence that contradicts her pleadings to defeat a motion for summary judgment. *Id.*; *see also, e.g., Cherry*, 2020 U.S. Dist. LEXIS 173285, at *9 ("Cherry concedes that her live pleading states that the mayonnaise spill was open and obvious and argues that other summary judgment evidence rebuts that statement to create a genuine dispute of material fact. . . . But whether the mayonnaise spill was open and obvious is foreclosed by the pleading, and Cherry is bound to her original statement of fact.").

7

Plaintiffs' Original Petition states: "Galvan died *while working* for Defendant as a result of Defendant's actions." ECF No. 1-1 at 2 (emphasis added). The Original Petition details Defendant's — Galvan's employer — many alleged acts and omissions that Plaintiffs assert give rise to liability. *Id.* at 7–8. Plaintiffs allege "[t]he acts and omissions of Defendant proximately caused the death of Mr. Galvan." *Id.* at 9. Additionally, Plaintiffs' Motion to Remand stated they "filed a civil action against Defendant involving a worker who died from a *workplace incident*." ECF No. 9 at 1 (emphasis added). Plaintiffs also sought remand based on the exclusive-remedy provision's language, stating such a provision applies "where a worker died in the course and scope of employment." ECF 9-1 at 3 (citing TEX. LAB. CODE 408.001(b)). The Court finds Plaintiffs judicially admitted their claims are based on a workplace incident and thus no genuine issue of material fact exists as to whether Galvan's death was work related.

Plaintiffs' reliance on the denial of benefits by Defendant's worker's compensation insurance does not disrupt the exclusive-remedy provision. The workers' compensation insurance carrier denied the insurance claims because "[a]vailable information fails to demonstrate a causal relationship between the employment, and the COVID-19 diagnosis" and "COVID-19 is an ordinary disease of life to which the general public is exposed outside of employment." ECF 47-1 at 62. Yet the TWCA ensures such a determination does not defeat the exclusive-remedy provision defense. *See* TEX. LAB. CODE § 408.001(d) ("A determination under Section 406.032, 409.002, or 409.004 that a work-related injury is noncompensable does not adversely affect the exclusive remedy provisions under Subsection (a)."); *Berry Contracting, L.P. v. Mann*, 549 S.W.3d 314, 328 (Tex. App.—Corpus Christi 2018, pet. denied) ("Section 408.001(d)'s only reference to the exclusive-remedy defense is to ensure that employers retain access to the defense even in cases of

certain noncompensable injuries; it says nothing of stripping an employer of the defense if coverage is denied for any other reason.").

A court should examine the substance of a claim to assess whether a cause of action falls within the exclusivity of the TWCA. *In re Crawford & Co.*, 458 S.W.3d 920, 926 (Tex. 2015) (orig. proceeding) (per curiam). Plaintiffs' negligence and negligent-entrustment claims arise from Galvan's work-related death. These claims therefore fall within the exclusivity of the TWCA and are barred. Because Defendant has established each element of the exclusive-remedy defense, it is entitled to summary judgment on Plaintiffs' negligence and negligent-entrustment claims. Plaintiffs' gross-negligence claim — however — survives summary judgment as it falls under the section 408.001(b) exception to the defense and Defendant does not seek summary judgment on this claim based on the TWCA.

2. The PLPA prohibits Plaintiffs' negligence-based claims.

The Court now turns to whether the PLPA bars Defendant's liability for Plaintiffs' negligence, negligent-entrustment, and gross negligence claims. The PLPA imposes a heightened negligence liability standard for claims against a business for "injury or death caused by exposing an individual to pandemic disease." TEX. CIV. PRAC. & REM. CODE § 148.003. Under the PLPA, a "person is not liable for injury or death caused by exposing an individual to a pandemic disease during a pandemic emergency" unless the claimant establishes that:

(1) the person who exposed the individual:

    (A) knowingly failed to warn the individual of or remediate a condition that the person knew was likely to result in the exposure of an individual to the disease, provided that the person:

        (i) had control over the condition;

        (ii) knew that the individual was more likely than not to come into contact with the condition; and

> > (iii) had a reasonable opportunity and ability to remediate the condition or warn the individual of the condition before the individual came into contact with the condition; or
>
> (B) knowingly failed to implement or comply with government-promulgated standards, guidance, or protocols intended to lower the likelihood of exposure to the disease that were applicable to the person or the person's business, provided that:
>
> > (i) the person had a reasonable opportunity and ability to implement or comply with the standards, guidance, or protocols;
> >
> > (ii) the person refused to implement or comply with or acted with flagrant disregard of the standards, guidance, or protocols; and
> >
> > (iii) the government-promulgated standards, guidance, or protocols that the person failed to implement or comply with did not, on the date that the individual was exposed to the disease, conflict with government-promulgated standards, guidance, or protocols that the person implemented or complied with; and
>
> (2) reliable scientific evidence shows that the failure to warn the individual of the condition, remediate the condition, or implement or comply with the government-promulgated standards, guidance, or protocols was the cause in fact of the individual contracting the disease.

*Id.* § 148.003(a)(1)–(2).

    a. *The PLPA requires proximate cause.*

The PLPA prevents liability "for injury or death *caused by exposing* an individual to a pandemic disease during an emergency pandemic." *Id.* § 148.003(a) (emphasis added). Defendant avers "the substance of Plaintiff's [sic] breach of contract and negligence-based claims relate back to allegations of an unsafe workplace and a resulting exposure to COVID-19." ECF No. 30 at 15. Plaintiffs disagree. They assert their claims "are not dependent upon Defendant's role in exposing [Galvan] to COVID-19," but on "Defendant's conduct — including Defendant's failure to appropriately respond — once Mr. Galvan was already infected." ECF No. 46 at 13–14.

The question before the Court is whether Defendant is "liable for injury or death *caused by exposing*" Galvan to COVID-19. TEX. CIV. PRAC. & REM. CODE § 148.003(a) (emphasis added). Many courts — including the Supreme Court — have interpreted "caused by" to impose a

10

proximate-causation requirement. *See, e.g., Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 536 (1995) ("The Act uses the phrase 'caused by,' which more than one Court of Appeals has read as requiring what tort law has traditionally called 'proximate causation.'"); *Killburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128 (D.C. Cir. 2004) (interpreting "caused by" to require proximate causation).

"It is a bedrock rule of [ ] tort . . . that a defendant is only liable for harms he proximately caused." *United States v. Monzel*, 641 F.3d 528, 535 (D.C. Cir. 2011); *see also* RESTATEMENT (THIRD) OF TORTS § 26 cmt. a (Am. L. Inst. 2010) (labeling proximate cause a "requirement[] for liability in tort"); W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 41 (5th ed. 1984) ("An essential element of the plaintiff's cause of action for negligence, or . . . any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damages which the plaintiff has suffered. This connection usually is dealt with by the courts in terms of what is called 'proximate cause' . . . ."). This is because "legal responsibility must be limited to those causes which are so closely connected with the result and of such significant that the law is justified in imposing liability." KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 41. Without a proximate-cause limitation, a business would be exempt from nearly any injury or death that could be traced to COVID-19 exposure.

Interpreting "caused by," as used in the PLPA, to mean "proximately caused by" tracks cases in which the Supreme Court has held a statute does not eliminate proximate cause without a clear intent to do so. *See, e.g., Pharms, Inc. v. Broudo*, 544 U.S. 336, 342–346 (2005); *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268–70 (1992); *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 529–35 (1983). The contemporaneous legislative

record[2] suggests "caused by" means "proximately caused by." *Cf. Easom v. U.S. Well Servs.*, 527 F. Supp. 3d 898, 913 (S.D. Tex. Mar. 19, 2021) ("'Congress' rejection of' the term 'directly' 'weighs heavily against' an interpretation that would impose that term." (quoting *Hamdan v. Rumsfeld*, 548 U.S. 556, 579–80 (2006))). *But see Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020) ("Congress could have taken a more parsimonious approach. As it has in other statutes, it could have added 'solely' to indicate that actions taken 'because of' the confluence of multiple factors do not violate the law."). Although each version of Senate Bill 6,[3] which became the PLPA, employs "caused by" rather than "proximately caused by," the Court is unaware of a Texas or federal case in which a court interpreted "caused by," as used in the PLPA, to mean something other than "proximate caused by." Accordingly, the Court interprets "caused by" to mean "proximately caused by."[4]

Plaintiffs' negligence, negligent-entrustment, and gross-negligence claims do not specify what conduct proximately caused Galvan's death. ECF No. 1-1 at 9–10. Proximate cause is usually a mixed question of law and fact for the jury to determine. *Poole*, 732 S.W.2d at 314. A plaintiff must establish proximate cause by probative evidence — not mere conjecture. *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997). "Because proximate causation is inherently a factual issue, and because it is a contested issue in most negligence cases, it has been said that summary

---

[2] The Court cites the contemporaneous legislative record only to resolve ambiguity. It uses the record as mere evidence of the ordinary public meaning of the phrase "caused by" as understood by legislators at the time of the PLPA's passage. *See* ANTONIN SCALIA, A MATTER OF INTERPRETATION 17 (1997); *cf. In re D.T.*, 625 S.W.3d 62, 71 (Tex. 2021) (orig. proceeding) (Texas courts "presume the Legislature is aware of relevant case law when it enacts or modifies a statue."); *Cruz v. Abbott*, 849 F.3d 594, 600 (5th Cir. 2017) ("Although our precedent is not binding on Texas courts when interpreting statutes, it is reasonable to assume that the legislature was aware of these decisions.").

[3] *See* Act of June 14, 2021, 87th Leg., R.S., ch. 528, § 3, sec. 148, 2021 Tex. Sess. Law Serv. Ch. 528 (S.B. 6) (West); Tex. S.B. 6, 87 Leg., R.S. (May 29, 2021); Tex. S.B. 6, 87 Leg., R.S. (May 17, 2021); Tex. S.B. 6, 87 Leg., R.S. (Apr. 8, 2021); Tex. S.B. 6, 87 Leg., R.S. (Apr. 6, 2021); Tex. S.B. 6, 87 Leg., R.S. (Mar. 10, 2021).

[4] But even if "caused by" were to be interpreted more broadly than the traditional proximate-cause standard, the Court would reach the same conclusions below.

judgment procedure is not well adapted to the disposition of negligence cases." *Hennessy v. Perez*, 725 S.W.2d 507, 509 (Tex. App.—Houston [1st Dist.] 1987, no writ). Even so, proximate cause can be a question of law when the facts are conclusive. *Purina Mills, Inc. v. Odell*, 948 S.W.2d 927, 935 (Tex. App.—Texarkana 1977, pet. denied).

"The components of proximate cause are cause in fact and foreseeability." *Doe v. Boys Club*, 907 S.W.2d 472, 477 (Tex. 1995). "Cause in fact is 'but for cause,' meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *Poole*, 732 S.W.2d at 313. "Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible." *Boys Club*, 907 S.W.2d at 477. "The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of the resulting injuries . . . . [and] justify the conclusion that such injury was the natural and probable result thereof." *Carey v. Pure Distrib. Corp.*, 124 S.W.2d 847, 849 (Tex. 1939). Foreseeability, on the other hand, "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Boys Club*, 907 S.W.2d at 478.

    b. *COVID-19 proximately caused Galvan's death.*

Defendant highlights several of Plaintiffs' alleged exposure allegations. ECF No. 54 at 2. For example: (1) "Defendant has experienced rolling outbreaks of COVID-19 within its workforce"; (2) "Galvan went to work in July in the packing shed"; (3) "Defendant did not inform Mr. Galvan of the prior COVID-19 outbreaks and did not inform him of the risk of COVID-19 in the workplace"; (4) "Defendant had actual awareness of the extreme risks of harm . . . . [and] Defendant already had several COVID-19 outbreaks through its workforce"; (5) Defendant "failed to maintain the workplace in a safe condition"; (6) Defendant "failed to inspect and correct

13

dangerous conditions"; (7) Defendant "failed to warn of the dangerous conditions"; and (8) Defendant "failed to give adequate warnings to employees or the risk of COVID-19 outbreaks on the job." ECF No. 54 at 2 (quoting ECF No. 1-1 at 4–5, 7–8) (emphasis removed).

Defendant argues the location of Galvan's work assignment — the packing shed, for instance — is irrelevant to any non-exposure claim. *Id.* at 3. Defendant also claims Plaintiffs "make clear that the alleged 'extreme risk' was the risk of contracting COVID-19 in the workplace and that Defendant allegedly had actual knowledge of prior 'outbreaks through its workforce' but failed to inform Galvan of the risk of exposure." *Id.* (quoting ECF No. 1-1 at 4–5, 7–8). Defendant also asserts Plaintiffs' allegations related to "dangerous conditions" must be made "in reference to COVID-19 and the risk of exposure in the workplace." *Id.* at 3–4 (quoting ECF No. 1-1 at 4–5, 7–8). Plaintiffs rebut: "Plaintiffs' legal claims . . . are unequivocally related to COVID-19, but Plaintiffs' theories of Defendant's liability are based on Defendant's conduct once it became aware of [Galvan's] illness — not on how [Galvan] first became ill." ECF No. 64 at 4. Plaintiffs try to tease out a distinction. They argue "it was *after [Galvan] became infected with COVID-19* that Defendant breached its duties, proximately causing the Decedent's death." ECF No. 64 at 3 (emphasis added). That conduct, Plaintiffs claim, killed Galvan. *See id.* at 3–4.

Under PLPA, Defendant cannot be "liable for injury or death caused by exposing" Galvan to COVID-19. TEX. CIV. PRAC. & REM. CODE § 148.003(a). The substance of Plaintiffs' allegations relates back to Galvan's exposure to COVID-19, rather than an intervening, negligent act. That exposure caused Galvan to become ill. And Galvan's illness proximately caused his death. Plaintiffs' allegation that Defendant failed to provide medical care, provide transportation, or "appropriately respond [ ] once Mr. Galvan was already infected" is rooted in Galvan's exposure

14

to COVID-19 at Defendant's facilities. ECF No. 45 at 14; *see also* ECF No. 56 at 5–6 (detailing duties alleged to be distinct from an exposure claim).

There is no evidence that additional medical care or other circumstances would have allowed Galvan to survive COVID-19. Again, the evidence must "justify the conclusion that [the] injury was the natural and probable result" of the negligent conduct alleged. *Carey*, 124 S.W.2d at 849. The facts presented by the parties indicate Galvan's death was proximately "caused by expos[ure]" to COVID-19 — not by some other intervening, negligent act unrelated to that exposure. The PLPA therefore prohibits Defendant's liability "unless the claimant establishes" certain conditions and "reliable scientific evidence" shows other circumstances were "the cause in fact of the individual contracting the disease." TEX. CIV. PRAC. & REM. CODE § 148.003(a)(1)–(2).

Plaintiffs do not offer evidence indicating Defendant "knowingly failed to warn [Galvan] or remediate a condition that [Defendant] knew was likely to result in exposure of an individual to [COVID-19]" and Defendant "had control over the condition," knew Galvan "was more likely than not to come into contact with the condition," and "had a reasonable opportunity and ability to remediate the condition or warn [Galvan] of the condition before [he] came into contact with the condition." *Id.* § 148.003(a)(1)(A). Nor do Plaintiffs offer evidence that Defendant "knowingly failed to implement or comply with government-promulgated standards, guidance, or protocols intended to lower the likelihood of exposure to [COVID-19] that were applicable to [Defendant]" and that Defendant "had a reasonable opportunity and ability to implement or comply with the standards, guidance, or protocols," "refused to implement or comply with or acted with flagrant disregard of the standards, guidance, or protocols," and "the government-promulgated standards, guidance, or protocols that [Defendant] failed to implement or comply with did not, on the date

that [Galvan] was exposed to the disease, conflict with government-promulgated standards, guidance, or protocols that [Defendant] implemented or complied with." *Id.* § 148.003(a)(1)(B).

And if those evidentiary failings were not enough, Plaintiffs do not supply the required "reliable scientific evidence" to demonstrate Defendant's "failure to warn [Galvan] of the condition, remediate the condition, or implement or comply with the government-promulgated standards, guidance, or protocols was the cause in fact of the individual contracting the disease." *Id.* § 148.003(a)(2). Without these required showings, Plaintiffs cannot sustain their exposure-based negligence claims. For these reasons, the Court finds the PLPA prohibits Plaintiffs' negligence, negligent-entrustment, and gross negligence claims.

Therefore, Plaintiffs' negligence-based claims do not survive summary judgment under both the TWCA and PLPA.

### B. Plaintiffs' Breach of Contract Claim Is Barred

Plaintiffs allege "[t]he actions of Defendant, as set forth above, constitute a breach of contract." ECF No. 1-1 at 10. Again, Plaintiffs provide a mere bare-boned allegation. *See id.* Defendant argues Plaintiffs' breach of contract claim "fall[s] within the exclusivity of the TWCA." ECF No. 30 at 12; *see also* ECF No. 30 at 7 ("The TWCA permits a subscribing employer's injured employee to recover benefits for work-related injuries on a no-fault basis, and in exchange, the employee foregoes his common law claims, regardless of whether they arise in contract or tort.").

The Court, however, agrees with Defendant: the TWCA's exclusive remedy provision bars Plaintiffs' breach of contract claim just as it bars Plaintiffs' negligence-based claims. The Supreme Court of Texas has held workers' compensation benefits substitute not only for common-law rights and remedies but also statutory rights. *Hartford Accident & Indem. Co. v. Christensen*, 228 S.W.2d 135, 138–39 (1950); *see also Prescott v. CSPH, Inc.*, 878 S.W.2d 692, 659 (Tex. App.—Amarillo

16

1994, writ denied) (stating a worker waives his common-law and other statutory rights of action against an employer when the employer is a workers' compensation subscriber). A breach of contract claim is a common-law claim. *See Tex. Mut. Ins. Co. v. Goetz Insurors, Inc.*, 308 S.W.3d 485, 488 (Tex. App.—Amarillo 2010, pet. denied) (referring to common-law breach of contract action). So, a breach of contract claim cannot escape TWCA's exclusive-remedy provision. *In re Crawford & Co.*, 458 S.W.3d 920, 926 (Tex. 2015) (orig. proceeding) (per curiam); *Smith v. City of Lubbock*, 351 S.W.3d 584, 587 (Tex. App.—Amarillo 2011, pet. denied); *see also* TEX. LAB. CODE § 408.001(a) ("Recovery of workers' compensation benefits is *the exclusive remedy* of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer . . . for the death of . . . the employee." (emphasis added)).

The Court also finds the PLPA prohibits Plaintiffs' common-law breach of contract claim. The above analysis applying the PLPA to Plaintiffs' negligence-based exposure claims applies with full force to their breach of contract claim — a claim also rooted in "injury or death caused by exposing an individual to a pandemic disease during a pandemic emergency." TEX. CIV. PRAC. & REM. CODE § 148.003(a). Because Plaintiffs' claim relates to "injured or death caused by expos[ure]" to COVID-19, the PLPA bars Defendant's liability for breach of contract. *Id.*

Accordingly, Plaintiffs' breach of contract claim does not survive summary judgment under both the TWCA and PLPA.

### C. Plaintiffs' Wrongful Death and Survival Claims Fail

In Texas, a plaintiff may only maintain a wrongful-death action based on her right to maintain a suit for injuries. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 646 (Tex. 2009) (orig. proceeding) (noting "the [Texas] Wrongful Death Act expressly conditions the beneficiaries'

claims on the decedent's right to maintain suit for his injures" (citing TEX. CIV. PRAC. & REM. CODE § 71.003(a))). A wrongful death action is an "entirely derivative cause of action" and a beneficiary cannot pursue "an entirely derivative claim." *Id.*; *see also Diaz v. Westphal*, 941 S.W.2d 96, 98 (Tex. 1997) ("The right to maintain such actions 'is entirely derivative of the decedent's right to have sued for his own injuries immediately prior to his death, and is subject to the same defenses to which the decedent's action would have been subject." (quoting *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992))). A survival action is also "wholly derivative of the decedent's rights." *Russel*, 841 S.W.2d at 345. A survival action does not create a new cause of action — it only permits the decedent's cause of action to survive his death. *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993).

Because the Court finds the TWCA and PLPA bar Plaintiffs' negligence-based and breach of contract claims, the Court finds Plaintiffs' wrongful-death and survival claims fail.

### D. Loss of Consortium Is Not a Cause of Action in Texas

Plaintiffs try to assert a claim for loss of consortium. *See* ECF No. 1-1 at 10 ("Ms. Garcia is the surviving spouse of Mr. Galvan. Ms. Garcia is entitled to recover against Defendant for loss of love, guidance, association, companionship, comfort, and society due to Mr. Galvan's death."). But "loss of consortium is not an independent cause of action." *Whittlesey v. Miller*, 572 S.W.2d 665, 666 n.1. (Tex. 1978); *see also In re Air Crash at Dall./Fort Worth Airport*, 856 F.2d 28, 29 (5th Cir. 1988) (stating "no such cause of action exist[s]"). The phrase "loss of consortium" is akin to an element applicable to damages. *Id.* Absent an underlying claim, Plaintiffs' alleged loss of consortium claim fails.

**CONCLUSION**

For the reasons stated above, the Court **GRANTS** Defendant's Motion in its entirety.

**SO ORDERED.**

February 15, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE